Good morning. Welcome to the Ninth Circuit for our midweek sitting. Before we start, Judge Fletcher and I would like to say thank you to Judge Liberti, who is here for several days helping us out with our caseload. Thank you very much for being willing to make it out here from Phoenix to warm, sunny Seattle. Thank you both. And we have four cases set for argument today, but before we do those, we have several cases that have been submitted without argument. I'll go ahead and just name them for the record. The first case is the The second case that's been submitted on the briefs is Urban Miguel v. Garland. It has one case number 17-70211. And the third and last case that is going to be submitted without argument today is the McDonald v. Molina Healthcare of Washington, Inc. case, and that's 22-35108. We have four cases set for argument today. The first one of those cases is Brown v. Holbrook. In that case, it looks like we have the Appellant's Counsel here in person while we have Appellee's Counsel appearing on video. Let's just make sure the video is working. Mr. Sampson, can you make sure we can hear you? Yes, Your Honor. I'm John Sampson, Assistant Attorney General. I hope you can hear me. Yep, we can hear you. That sounds good. So we will turn to you and it's Mr. Zarki. Mr. Zarki, can you state your name for the record and how much time you would like to reserve for rebuttal? Good morning, Your Honors. Alan Zarki on behalf of Mr. Brown. I'd like to preserve four minutes, and I'll watch the clock. That's good. Your Honors, in two separate ways, this case presents exceptional circumstances warranting equitable tolling. First, counsel made repeated assurances to Mr. Brown that he would file the petition on time. Ultimately promised he'd file it nearly a week early. His failure to do so fits squarely within the kind of attorney conduct that this Court and others has held short of abandonment warrants equitable tolling. And but for that conduct, the petition would have been timely. Had counsel not made those promises, Brown could have filed himself. Had Brown kept his promises, he would have filed before he ever got sick. In addition, Brown acted diligently by preparing a draft and submitting it to counsel for review and any improvement well before the statute ran. He followed up with repeated inquiries to counsel, and there's no question of diligence afterwards because once the exceptional circumstances had ended, the petition had been filed. So, you know, under under Maples v. Thomas, the counsel is typically the prisoner's, I think as it says, the prisoner's agent, and so the acts of the it doesn't sound like you're focusing on counsel's diligence here. You want to have counsel's diligence not included because you think it was the counsel's act behavior was extreme enough that he effectively abandoned him or something? Under the first basis for equitable tolling, it's the counsel's actions constituted egregious conduct that warrants equitable tolling. We've had numerous cases where this Court and other circuits have said when counsel makes a promise to the petitioner and tells him it's going to file on time or makes other similar misrepresentations, that is conduct short of abandonment. So we also have, I think blowing a deadline I think has been mentioned as sort of this stereotypical, not egregious deadline. So isn't it sort of an implicit promise by every counsel that you're not going to blow the deadline? Your Honor, there may be that implicit promise, but that has been an explicit. This Court and others, for example, in Luna, said when you affirmatively mislead a petitioner to believe a timely petition will be filed, that's egregious professional conduct warranting equitable tolling short of abandonment. So is the difference, is the line, because you sound like you would agree that if you just blow a deadline, if you go and you just, let's say you miscalculated and you thought it was tomorrow but it's today, right? So you file it tomorrow, it's today, and there's nothing else and you didn't have any affirmative statement, you would agree that that would not constitute extraordinary circumstances under the case law? That would be garden variety. So what is the, so I'm trying to figure out what you think is the difference if, is the difference that if you say, if you get your counsel to say, I will file by the deadline, that's the difference? Because if that's the difference, wouldn't every counsel just basically sign something saying I'll file by the deadline and if they don't, that would help out their, that would make sure they met the extraordinary circumstances? Well, Your Honor, even if you're suggesting somehow that this is an exception that can become, blow away the entire rule, the point is, first of all, that this Court and others have endorsed that and that's just what occurred, for example, in Luna, where counsel told him a petition would be filed shortly and this Court said, well, had he been told of the truth that it wouldn't be filed, he would have filed himself and that constituted grounds for equitable tolling. This Court cited approval. So it's a difference here, I'm just trying to figure out where the line, so it's a difference if it's a mistake, like if I'm sitting here and I make a, you know, it's a good, what do you call it, like a fair-minded mistake, right? Like I just blow the, I didn't calculate that thing right. Is that the difference versus if you promise something and it's not a mistake, but, I mean, like what, I'm just trying to figure out what the difference is. Well, Your Honor, first of all, it's perhaps if you just say one time, I'll get it on time casually like that, but where there were repeated requests for, and repeated assurances, that's what occurred here and that's what occurred in these other cases, such as Luna, such as the Dillon case from the Second Circuit that this Court cited approvingly in Luna, this Court in Schuster in an unpublished opinion, and numerous others that I cited in my brief. Your Honor may think that that's a bad line to have been drawn and that it may create an exception that's too large, but it is one that this Court has established in precedent. And that, maybe we could talk about the facts of this case here, and as I understand it, the petitioner's lawyer was diagnosed with COVID. Is that, that's correct? That's not quite correct, Your Honor. What is, what are the... First, let me make clear, this is, that's now turning to a separate grounds for equitable tolling. He became ill with symptoms, very, very suggestive of COVID, then learned he'd been exposed to someone who had COVID and his physician told him, you need to quarantine. To isolate. Okay. So, so here's, here's where I think I'm, how I'm looking at it is, is the lawyer has, has his client's freedom in his hands. When, when we're talking about a habeas petition, he was given this, this request to quarantine. I feel like he still should have done whatever he needed to do in order to get this petition filed. So, so I think that, that's how I'm looking at it. And couldn't the lawyer have cleared out his office and said, I'm coming in to file this petition. I'll be there for 15 minutes. Well, first of all, I'm running up on my time, but to answer your question, these are the questions that could be addressed in an evidentiary hearing. The point is sufficient grounds were alleged as to both that ground, his illness, and as to the other ground, his misrepresentations, misrepresentations to the client that on both grounds, the court should have had an evidentiary hearing rather than simply denying it out of hand. And if, let me follow up with that. And my guess is that the presiding judge will give you enough time for rebuttal, but I want to follow up with judge, with judge Liberty's question. So he was a little bit sick. He had symptoms, but he wasn't like disabled sick. He had been exposed, but he wasn't really sick. I mean, he could have done the work. The question is, why didn't he do the work? Why didn't he sort of work from home? The petition that was given to him by the client was almost finished. I mean, if he had said to Mr. Brown, listen, I can't get it in. Why don't you send it in? Brown would have just sent it in. Well, first your honor, he can't just reach a prisoner at in, in a matter of hours. Uh, that's just not the way it works with lawyers trying to reach prisoners. That can take weeks. This is a friendly question. This is not a hostile question. But what I'm saying, the answer to your question about, first of all, about how sick he was, he said he had a high temperature and these other symptoms. The court, the district court certainly could have, rather than grant, grant equitable tolling, scheduled an evidentiary hearing where the details, but the point is counsel said, this is why the petition is late. That is an averment that his illness was the cause. We don't know whether he could have worked it from home at all. What his technological setup was at that point. He was a sole practitioner and, and these are issues that could be handled in an evidentiary hearing. But again, this is also separate, completely separate from the issue of counsel's representations to the climate. I just want to make clear that there's two issues here. I'm more or less where I think Judge Van Dyke is with respect to, so the client is assiduous. He's carefully follows up and so on, but that in itself is not enough. Meaning we know from the case law that if the client says, you're going to do it, you're going to do it. He promises, he promises. And then the lawyer miscalculates the deadline by a day, client's out of luck. So that helps, but it's not enough. You've got to show that the lawyer did something egregious. And so I'm trying to figure out why is it egregious here? Is it egregious because what he got from the client was virtually complete? He didn't really have to do any work on it. When he was a little bit, when he had symptoms, was he sick enough? He couldn't do it. I mean, I know we don't have to have abandonment, but this almost sounds like abandonment. All of a sudden he says, I have to quarantine. And then he just quits working. Well, Your Honor, those are all proper issues for an evidentiary hearing. I would like to note that the Dillon case from the Second Circuit that this court cited approvingly in Luna, counsel didn't miscalculate the date by one day, but he had promised he would get it, just as here, promised he would get it in early. And because of that representation, the court found equitable tolling. So if I may reserve. Yeah. And don't worry about your time. I'm not going to get Judge Fletcher mad at me by not giving you plenty of time, but maybe something to think about. On one of the challenges is, is if he wasn't diligent up until the time all of this bad stuff happened. I mean, under, under, I think our more recent case law, it's an en banc case post Luna, which is the Smith case. He has to have been diligent both before, during and after. So, I mean, part, if he, if he was just kind of sitting on his hands and then plan to work on for the last day, then you might have a before diligence that you don't have to answer that now. Well, they give you time to think about that and respond. But I'm, I'm curious as to, as to what your thoughts are on that concern. So thank you. Thank you, counsel. The government may proceed. May it please the court. John Sampson, assistant attorney general for the respondent appellee. As this court is well aware, the petitioner has the burden of proving that he is entitled to equitable tolling. And the standard is that there must be an extraordinary circumstance that prevented the timely filing and that the petitioner acted with diligence. Addressing the last issue that petitioner raised regarding the counsel's illness in his absence from work for the time period from November 18th, 2020 through November 24th, 2020. So he was absent from work the last day of the statute of limitations period. He had not yet, according to counsel, had not yet finished it. He had one more day's work to be done. He had planned on filing it on the 18th, but then he became sick. Even if this court were to grant him tolling for the time he was out sick because of his fear of COVID, that he had COVID, he still, when he returned on the 24th, caused further delay by not either electronically filing the petition or having it personally delivered with a messenger service or even himself. He instead mailed it and that caused it to be three days late. If he had not been sick and had mailed the petition on the 18th, which was the due date, it still would have been untimely. So even if you get rid of that extraordinary circumstance and giving him the benefit that his illness was a reason to toll the statute of limitations at that point, he still failed to timely file as of the 24th when he returned to work because he mailed the petition. Can I focus on that specific question? He says that he contacted the court and the court said, under the circumstances, you can mail it in and we will treat it that way. Assuming that's true, which may or may not be true, but assuming that's true, is that sufficient grounds for not for not hand delivering it and instead mailing it when he's been assured by the court that that's all right? No, Your Honor. In two points on that. First, I believe Your Honor's thinking about the second case. Oh, I'm sorry. No, I got the wrong case. Yeah. No, that's fine. But even if that was a representation, misrepresentation, I would submit no, because that again falls into the category of maybe negligence or gross negligence on behalf of somebody. It's not something that that he had it to be filed. And I will admit there was confusion even in the district court. The magistrate judge and I originally thought it was the 17th because that was the 365th day. Then we realized, no, it's a leap year was the 18th. So this is a case where miscalculations can occur. But that under the Supreme Court case law and under this court's case law, the Ambon case of Smith, that type of miscalculation is not sufficient. Petitioner relies heavily on the Luna case. And I would point out that Luna, the facts are different. And Luna also issued before the Supreme Court last term reaffirmed in Shin v. Ramirez that a petitioner is bound by the actions of the petitioner's agent, the attorney that the petitioner hire, even if it's gross negligence, even if they fail to do something that they should have done, that still is attributable to the petitioner. Are you arguing that Luna has been overruled by the Supreme Court? I won't necessarily say overruled, but I would say corrected. I don't know if I could. I guess I would say overruled, Your Honor, because of two reasons. One, Luna applied or thought you would the stop clock provisions, which this court in Smith v. Davis later said, no, we don't apply stop clock. We apply a diligence requirement and showing that it prevented. So I would say that Smith cast doubt or if it overruled Luna. And then in Shin v. Ramirez, the Supreme Court reaffirmed what the Supreme Court said in Maples, which Luna said, no, they didn't really mean that in Maples. They reaffirmed in Shin that the attorney is the agent and under agency law, less than abandonment, unless it's an extremely egregious misconduct, it simply does not apply. And I would point out that Luna just says egregious. Luna doesn't say extremely egregious. Are you adding the word extremely? Yes, I probably did, Your Honor. So I back up on that. And I look at the facts. In Luna, the petitioner had actually filed a timely federal petition. And then his court appointed attorney withdrew that federal petition and then waited six years to file a federal petition. So that even though it wasn't abandonment to the extent he was representing him in state court, it was egregious because it was essentially abandonment. It was almost as if it's constructive abandonment versus actual abandonment. And so while it may not have the level of actual abandonment because the attorney was still his attorney, he still waited six years and withdrew a timely petition. So that's why in that case, there was the egregiousness. Here we're talking about an attorney who waited to the last day, which I learned in law school 35 years ago, you don't wait to the last day on the statute of limitations. You get the petition in early because things like this may occur. He did not have an active PACER account. He did not have an active account that he could electronically file. He misread the court's rules regarding COVID operations. Yes, the window of the clerk's office was closed. But right below that, it said the documents could be hand delivered to the court. I think you're making a pretty good case that this was egregious by what you just said. No good lawyer would have done what this lawyer did. Sure. And Mr. Brown may have an action against Mr. Kolke for misconduct or for breach of contract. But that again is gross negligence. And as the Supreme Court and this court has repeatedly said, gross negligence is not enough. It has to be a grievance. So counsel, we're talking a lot about facts here. Why don't you respond to petitioner's argument that the district court should have held an evidentiary hearing and let us know what you would accomplish. Yes, your honor. So it's the petitioner's burden to come forward with evidence in this court held long ago on Morris versus State of California. Simply making allegations is not enough to get an evidentiary hearing. You have to come forward with competent evidence showing that a disputed fact needs to be resolved by an evidentiary hearing. We're not disputing anything that he has said about counsel's illness. We're saying that as a matter of law, even with those allegations, and I believe that's what the district court said, was even with those allegations being accepted, that Mr. Kolke didn't work on the petition to the last minute, didn't have his PACERS account set up, was out sick, that's still not enough under this court's standards in Smith versus Davis and under the Supreme Court standards in Holland versus Florida. As a matter of law, it fails. So since it fails as a matter of law, there's no need to have an evidentiary hearing that's going to prove the facts that we've already, that the court has already said is insufficient. That's why there's no need for a remand for an evidentiary hearing. And I would just reaffirm that, again, Mr. Kolke was acting as the agent. His conduct, although negligent, was not egregious. Although Mr. Brown may have an action, I'm not saying he does, but he might have an action against Mr. Kolke. That's not sufficient under this court's case law and the Supreme Court's case law to equal equitable tolling. And for those reasons, the respondent would ask that this court affirm the district court's appellant's counsel. We'll go ahead and put two minutes on the clock. Your Honor, first to answer the question you asked, last asked me, he, his, he, counsel did aver. He had been working on it along this time. And, and the, the Smith case doesn't specifically says it requires that you work on with some regularity. It doesn't require that you automatically be done days before, just in case something emergent might happen. So, so is your position, you do think counsel was diligent up until he got sick? Is that your position? Yes. Well, up to, other than the fact that he had represented to Mr. Brown, he was going to file by about five days before, which would have gotten it filed even before he got sick. So in terms of, in terms of, that means he wasn't diligent before, right? It means in terms of his, Your Honor, there's two different standards of diligence. There's what the case law requires. And if an attorney meets that, then, then we are in a situation where equitable tolling will apply if there are exceptional circumstances. But what Luna makes clear is you're held to a higher standard than the case law if you make a promise to your client in response to repeated assurances. That's why we have two different theories going on here. It sounds a little bit like your argument is he was diligent for purposes of establishing diligence to the extent his, his actions were attributable to his client because he's the agent, but he was not diligent. In fact, he was sort of extremely, he was undiligent enough for purposes of meeting the extraordinary circumstances. Kind of a little bit of a have your cake and eat it too. It feels like he's both diligent and not diligent in just the right ways. There are two standards involved here. And to respond briefly to a couple of Mr. Sampson's comments, Luna, I do not believe relied on stop clock at all. The state contends that grant relied on the stop clock. As I discussed in my reply brief, it did not. And it's still good law, but even if it's not good law under Smith, we're entitled to an evidentiary hearing. And counsel is also wrong is allegations. This court, while he cites one case that says, well, you actually don't think he studied it in his brief. He mentions a case today that back in 1990 said competent evidence since then, this court has said time and time again, as is the Supreme Court. If your allegations would entitle you to relief, you're entitled to an evidentiary hearing. Both Mr. Brown's allegations on the theory under Luna of egregious conduct entitled into an evidentiary hearing and Mr. Cokie's out of vermin's entitled him to an evidentiary hearing. But the respondents say that they don't, that they don't contest your factual allegations. So, so what would be the point of the evidentiary hearing? Well, your honor, what they contend is that even under our facts, we're not entitled to relief and we're disagreeing with that and saying, if they want to contest it, then they're at least we're entitled to an evidentiary hearing. But if they're saying they have no facts and what this court should do is remand for a reversal rather than for an evidentiary hearing, they're saying they win as a matter of law, even on even taking the facts and in the light you, you portray them. Right. And I'm, I obviously disagree with that. And I've got cited cases that I believe clearly show that these facts are a minimum or enough for an evidentiary hearing. And in fact, entitled us to relief if they are true. Any other questions for my colleagues? Thank you, your honor. All right. Well, thank you counsel. This case will be submitted as of today. Thank both sides for their argument.
judges: FLETCHER, VANDYKE, Liburdi